also known as twin appellate. Mr. Proctor for the appellate, Ms. Kelley for the affiliate. May it please the court, my name is Gary Proctor and I am court appointed to represent Mr. Rice. Good morning. How are you this morning? Good morning. I wanted to start by talking about what is not in dispute in this case. Because really, the more I looked at it yesterday, the simpler the issues became. It's not disputed that 2255 in this matter was filed 18 days late. It's not disputed, although the government did reserve the right to come back and argue about it if we overcame the procedural hurdle, that trial counsel misunderstood the difference between career offender guidelines and an 851 notice. As the court is no doubt aware, career offender guidelines are career offender prior convictions, due time of life, 10 or 15 years depending on how long the length of sentence was. An 851 notice, if you get a prior conviction when you're 18, it still qualifies under 851 when you're 80. And I would point the court to 538 of the joint appendix where trial counsel said it's not timely. It was filed more than six months before trial. So the only thing he could have meant in terms of not timeliness is the prior conviction timing out, which we know it didn't and which drastically changed petitioner's exposure following trial from a 10-year mandatory minimum to a life mandatory minimum. So with that said, with what's not in dispute, let's talk about what is in dispute. Can I just ask one other point that seems to be not in dispute? It's the legal rule that a mere miscalculation of a filing deadline is not sufficient to support equitable tolling. Absolutely. Holland. So what do we have here above and beyond the attorney error in calculating that limitations deadline? Absolutely, sir. I'm happy to address that. First of all, when we look at the framework, Holland, the Supreme Court case, talks about the district court must demonstrate flexibility. It must avoid mechanical rules. It must relieve hardship from hard and fast adherence to the rules. So there isn't a one size fits all. That's true, but Holland's pretty clear that garden variety failure by a lawyer is not enough. Absolutely. 100% agree with that. So let me turn to – And the behavior of the lawyer is one of the two requirements. They're separate. You have to meet both. Right? There has to be an extraordinary problem. Yes, sir. So let's, if I may, let's talk about that. Right. You know, the first – there's two tasks the government cites. The Menomee tribe, I probably butchered that name, talks about two things. Thing number one, the petitioner must have been pursuing his rights diligently. And that aspect of the task looks at things within the litigant's control. So let's look within what's within Mr. Rice's control. First of all, I apologize. I realized yesterday it wasn't in the joint appendix. But the court, of course, can look at the sentencing transcript. That's public record, and it's already been sent here. It was raised at sentencing. My lawyer misunderstood. Age 51. He misadvised me. And there's a discussion with Judge Walton and sentencing counsel where Judge Walton says, Well, I guess I could bring a trial lawyer in. We could ask him questions. We could make sure he understood. And at the end, page 14 of the November 7, 2006, transcript, Judge Walton says, I guess if you're going to raise it, file it 2255. So here we don't have waiting years and years and years. Mr. Rice raised it at the first opportunity, which was when it attached upon conviction. Suppose you're right about reasonable diligence. I think the harder point for your side of the case is extraordinary circumstances. And if we look at the affidavit that I think it was Jennifer Wicks filed, what seems to be the case is she made a bad mistake in missing the deadline. But other than that, the attorney-client relationship was functioning. She was engaged with him. She went to the prison. This isn't a case where the lawyer doesn't return phone calls for a couple of years or abandons the client. She did everything a lawyer reasonably would do and filed a pretty good 2255 motion, but for the miscalculation of the deadline, the representation was functioning just fine. Well, you know, if we want to talk about extraordinary circumstances, I'm not sure we're there yet. I think the better approach would be to remand this for a hearing to Judge Walton. Ms. Wicks, her affidavit is what, three pages? She could come testify. The court could make findings. Mr. Rice, you know, the Cicero case that the government cites talks about how one defendant was stabbed and in the hospital at the time. Another defendant didn't have access to a law library. Mr. Rice could come testify. Ms. Wicks could bring in the correspondence. If he wrote 18 times. Do we need to remand? My understanding is there's a Rule 60B motion pending right now in district court that identifies that there were additional conflicts that were not waived by Ms. Wicks, which would suggest that, in fact, the attorney-client relationship wasn't going so well. There's information about Mr. Cooper, who was appointed to do 2255 because of her conflict, not doing that job properly. Aren't those new factors? Maybe in addition to these other things, we should wait and see what the district court thinks about. Is there any value to us doing that? I mean, you're talking about us remanding at the same time the district court has a 60B motion pending and can really dig into this conflict of interest problem, which I think is, by any definition, an exceptional circumstance. Well, you know, the reason I followed the 60B motion when I did is I didn't want the government to say, well, even if the 60B motion did lie, you didn't exercise due diligence in filing it. So I followed it. The last, I think it was last week, Judge Walton asked me, show me how I have discretion to hear this. So I followed that quick pleading to say, you know, if the court indicates it would grant or it raises a substantial issue. We could hold an abeyance. We could do an indicative remand. There's options here, and I'm just trying to figure out what the right ordering is, given, as you said, that this is an area where the district court normally has the first look or if there needs to be a second look, as you suggested by remand, we should go ahead and let Judge Walton do that in light of the new information that's at least been raised in the 60B motion and the extraordinary or unusual circumstance of a conflict of interest. Right. And what concerns me is, you know, Mr. Rice needs to stay in court. If you were to remand it for a hearing, I would, of course, be saying to the court, we're here anyway. Mr. Rice is being written in anyway. Let's go ahead and address all these issues while he's present. But I don't want this court to punt in the hopes that my 60Bs. An indicative remand is not a punt. He goes. He does. We cede jurisdiction back for purposes of him to rule, and then they can come back up. But then it will come back up in light of that secondary ruling. And I would certainly take that in a heartbeat, Your Honor. I think this record will be—of course, it could be flashed out a lot more. Can you tell me just something? I want to make sure I understand one thing in the record. It sounded to me like the reason Ms. Wicks gave for blowing the filing deadline here was that she was thinking about another client and not this client, another client's deadline. So he was just left to tag along. Is that right? She said there was some other deadline on December 1. That's why she filed December 1. That's exactly right. She got two notices from the Supreme Court by this court simultaneously. One was the notice of the Supreme Court denying certiorari. The other one was the mandate being issued. And she somehow conflated the mandate, which, of course, doesn't start any clock ticking, to the certiorari being denied, which does, and just mixed them up. And hence, she thought her filing deadline was December 2, I believe, and filed it on November 28 out of an abundance of caution and just blew the deadline.  The one, you know, when you talk about, let's say he wasn't diligent, and for various reasons I believe, or Mr. Rice was diligent for various reasons I believe he was, you know, he found a lawyer, he met with his lawyer, he signed his affidavit early, he contacted her. This wasn't just a, you're my lawyer, you figure it out. He affirmatively said to her, when's this thing going to be filed? What can I do? How can I help? But when we get to this. Go ahead. So on the 60B, there's a pending 60B. Correct. And you are asserting the possible WIC's possible conflict of interest as a basis for establishing extraordinary circumstances? No, this 60B issue, yes, I'm sorry. Okay. I don't want to conflate extraordinary circumstances. So you may or may not be able to make that showing on your 60B motion, and I assume if it's denied that's a final order and you can hear. If I get a certificate. Right. But we have a pending appeal from a final decision, a then final decision by Judge Walton finding no reasonable diligence and no extraordinary circumstances, and you came here as the appellant and did not raise that conflict as a basis for us to find an extraordinary circumstance in this pending appeal. So I don't see why any conflict is a ground for us to reverse this appeal as opposed to just a ground for you to raise in your 60B. I agree. Conflict is not before you. Okay. I'm not disputing that. And how does the conflict even relate to the question of the lawyer's failure to file on time? What's the connection between the conflict and the question before us today? There is none, sir. If I misspoke, I apologize. Then why are you raising it? What am I missing? What will the district court decide? The district court will decide whether in filing the 2255 Ms. Wicks had a conflict that should have been waived prior to it being filed. How are you saying that issue? I don't understand that. But as you say, it's not before us anyway. Your answer to Judge Katz was very clear. But I just want to pursue your answer to Judge Millett's question about what the lawyer did here. So as you described her failure, that is she mixed up the two cases, right? What's your best argument that that's not just a garden variety mistake, that that doesn't qualify under Holland? Well, because my client did a lot more. No, but there's two separate requirements. First, we look at what your client did, and then we look at what the lawyer did. Isn't that what Holland says? Yes, sir. Okay. And they're both requirements, right? Correct. So let's just focus on what the lawyer failed to do. What the lawyer failed to do was what the lawyer did was she mixed up two emails, right? Yes, sir. Okay. If that qualifies as just a garden variety mistake, then under Holland you don't have any entitlement for equitable toll, equitable relief, right? Because Holland says you have to meet both requirements. If it's beyond a garden variety mistake. Correct. So you need to make the case that this is not a garden variety mistake. Correct. What is that case? That's what I want to hear. Okay, certainly. First of all, the vast majority of 2255s filed in this and every other district, you don't have a lawyer. So what happened here is atypical in that Mr. Rice had achieved a lawyer. Second of all, because you don't have a lawyer, if Mr. Rice had chosen to file his own 2255, typically pro se pleadings aren't entertained when you're represented by counsel. Right. So that distinguishes it from the vast majority. Well, then wouldn't any mistake by any lawyer in a 2255 case qualify as non-garden variety under that period? Most of them would not qualify because of the lack of diligence as opposed to the mistake of the lawyer. No, no, no. But you disagree with me that there are two separate requirements. Correct. But I guess what I'm trying to say to the court is I think most fall down on the first prong. When someone hires a lawyer and says you're the lawyer, you figure it out. I see. Okay. Do you have any other questions? No. Anything else? No. Okay, thank you. Thank you. Good morning, Your Honors. May it please the Court, Catherine Kelly on behalf of the United States. Your Honor, as defense counsel has aptly stated, the only question here is whether or not the district court properly denied equitable tolling, and that answer in this case is yes, because all we have here is garden variety miscalculating the deadline for filing the 2255 motion. There's simply nothing beyond what has time and again been rejected by the Supreme Court as What we have is simple negligence. An attorney who in the record of this case acknowledged that she had a conflict of interest and was going to have to withdraw going forward. So she saw this. That's in the record. I'm sorry, go ahead. I'm sorry. Please, Your Honor. I didn't mean to interrupt you. What we also have is what the Supreme Court has worried about, at least in the state habeas context, and that is his ineffective assistance of counsel claim has never been inside the door of a courtroom yet. That's a factor in procedural default, so maybe it should be a factor in equitable tolling. They're both equitable inquiries, because he was told not to raise it on direct appeal by this attorney, who said she'd do it in the 2255, and then blew that at the same time she recognized she had a conflict of interest that was going to require her to withdraw. She wasn't paying attention to his deadline. She was just following the timing of another client and just carried him right along on that. He did everything humanly possible other than file his own petition, which we don't want to encourage when someone's represented by counsel. So why are those things not enough? Well, first of all, factually, in Ms. Wicks' affidavit, which is at Joint Appendix, page 591, at paragraph 3, she says, I was appointed to represent Anthony Rice in his appeal before the D.C. Circuit. Prior to being appointed, Mr. Rice and his trial co-defendant, who she had represented, Mr. Bailey, signed waivers of potential conflict because she'd represented Mr. Bailey at trial. So she is not saying that she has a conflict. She was concerned going forward with additional work on the 2255 might potentially lead her to a conflict of interest. But she had to withdraw. I mean, she told the court someone else had to get appointed. Correct. And she made those arrangements. But secondly, what the court is looking at is not whether or not a future conflict, if any, might affect the timing of the filing. All that is looked at under Holland is whether or not the defendant has been pursuing his rights diligently, as in actively litigating his case, taking steps. Do you dispute that extraordinary circumstances stood in the way that prevented his timely filing? On the first prong, do you dispute that he was diligent? I do dispute that he was diligent, Your Honor. But what was he supposed to do? All that he said, and I compare this to McDade, which is one of the rare cases where this court has granted equitable tolling. All that is said that Mr. Rice did in this case was that he, quote, in Ms. Wicks' affidavit, continued to follow up with me, which is about as vague a statement as you can imagine, and that when she visited Mr. Rice in prison in the fall of 2015, by that point he had already, quote, signed his affidavit, which is not exactly a sterling example of diligence. What you had, which was very different in this court when they granted equitable tolling in McDade, you had a defendant who had went out and got three affidavits from impeachment witnesses on his own. He had gathered evidence in support of his ineffectiveness claim. He had personally told the attorney what the filing deadline was for the 2255 motion four months before it was due in a letter, and he had researched his claim. And all of that information was recorded in letters that were before the court. So what he did, though, is he raised this thing from the get-go. The second he realized the problem, he raised it at sentencing. He wanted to raise it on appeal, was told not to by this attorney. He insists on a 2255 motion, did everything he could to make sure it was going to happen. I don't know that he did everything he could to ensure it was going to happen. What more was he supposed to do? All he did was just say. What more should he have done? He could have done what was done in McDade. He could have filed his own. He could have gone out and how was he in prison going to go out and get more affidavits from witnesses? I don't know, but Mr. McDade managed to do it, Your Honor. Was he in prison when he did that? I believe he was. Are we sure? And what is different about McDade as well is that McDade actually made a timely filing in his case. It was just that there was one additional claim he wanted to add. And McDade did describe his diligence as unusual, and all we need is reasonable diligence, right? Well, what we need is, under the Holland test, we need both that he's been pursuing his rights diligently and an extraordinary circumstance that was outside his control. I'm just focused on diligence right now, and the Supreme Court's adjective is reasonable diligence. And so you have someone who's pressed the issue, pressed the issue, pressed attorneys to raise the issue, was ready to go, working with the lawyer. I don't know that we have any of that, Your Honor. Also, McDade doesn't say that what happened there was the minimum. No, that's right, Your Honor. It was just an apt example. We have to just look at those facts, right? We look at the facts, yes. And compare them to these facts. And there's nothing in McDade that says the circumstances of this case wouldn't qualify. No, I'm not saying that McDade sets the standard bar on what has to be diligence, but it's just an example, given that the Supreme Court has time and again said this is a sparingly granted type of relief, that those are the types of circumstances that get you to equitable tolling. And time and again, the Supreme Court has said, and this Court, that garden variety miscalculation of a filing deadline by an attorney is simply not an extraordinary circumstance. I get that. So now, apart from diligence, exceptional circumstances. All right? So we have the mistake by the lawyer, but we have, it's not just garden variety when you add in reasonable diligence by the defendant. You have to have both, Your Honor. And what about the exceptional circumstance here? You have a substantial claim of ineffective assistance of counsel at trial that has never seen the inside of a courtroom. And at least in Martinez and Trevino, in state habeas where we're supposed to be more deferential, less exacting, the Supreme Court has worried extensively about foreclosing a defendant from presenting this claim, which is essentially like a direct review claim, but just can't be presented until collateral stage. Getting to have it presented and heard by a court, and this just seems to be a serial problem of ineffective lawyers that are keeping this guy from having his claim heard. Is that exceptional? The Supreme Court said it best in Lawrence v. Florida, and it said that if a defense counsel mistaken miscalculation of a limitations period entitled a defendant to equitable tolling, it would essentially equitably toll the statute of limitations period for every person whose attorney missed a deadline. And that's all we have going on here. We also don't look at the merits, which are obviously not before the court at this point, because all that we're here on in the Certificate of Appealability is the issue of whether or not the district court... Are we forbidden to look at the merits? It's not part of the equitable tolling test, Your Honor. We don't look at how late it was, and nor do you look at what the merits of the underlying claim are. Why can't that be? I'm sorry, is there a case that says that can't be part of exceptional circumstances ever? Extraordinary circumstances. I would give the court an example, for instance, in Lawrence v. Florida, you had a situation where you had a defendant who was claiming that he had relied on his attorney, who was also claiming that he was mentally incapacitated, and he was a death row prisoner. And in those circumstances, even, they did not find that equitable tolling should be granted. Right, but since then, in Martinez and Trevino, they said, look, and this is how they've dealt with Coleman, too, they said, look, when we're talking about someone who's trying to raise what's effectively a direct review challenge to a criminal conviction, where ordinarily they should have an attorney competent under the Sixth Amendment to do it, and they're not able to do it until the collateral stage, that we need to, that we aren't going to, we're going to be very hesitant in cutting this off, that we really do factor in to equitable analysis. Now, there it was procedural default, but I don't know why that would be looser on equity than direct review of just meeting federal filing deadlines in a federal case. I think what's key in why neither Martinez nor Trevino apply here is because those are cases that deal with state prisoners who have gone through a straight procedural process and then come to federal court. But they don't affect cases, Miller, Martinez, and Trevino have not been held to apply to federal habeas cases in this circuit, That's what I'm asking you. Why, if you acknowledge that that is a less rigid approach to this attorney deadline error in those cases, I'm sorry, Your Honor, it just simply doesn't apply here because Well, why wouldn't we take that same type of, as I see our federalist system, right, we have to have the greatest respect for procedural rules and states' enforcement of them. When you're dealing with state defendants who've already been through a state habeas before they even come to us, and so equity should be less readily available in those situations than when we're here, we're dealing with a federal deadline not met in a federal case, federal prisoner, and so I just want to get an answer to why those principles shouldn't at least inform, don't have to transport them, but they should inform our judgment about what's relevant to equity. They don't apply here, Your Honor, because in this jurisdiction, the defendant is allowed to raise an ineffective assistance of counsel claim on direct appeal, so you don't have a situation where he only has the one bite at the apple and it's 2255. Is the federal system different from the Texas system that was at issue in Trevino? They seem similar in that you can raise ineffective assistance on direct review, but it's not the preferred option. No, it's different, particularly in this jurisdiction, because this jurisdiction under the Rashad case, not only can you bring an ineffective assistance of counsel claim in the D.C. Circuit on direct appeal, the common practice of this court, if an ineffectiveness claim is brought on appeal, is to remand the case to the district court to deal with the ineffectiveness claim in the first instance, to flesh out the matter in court. Yeah, but his court-appointed attorney told him not to. I mean, like I said, we've got serial problems here with his representation. But ultimately— You know, the same court-appointed attorney that later had to back out for conflicts. She has not had to back out for conflicts. She has never stated that she was certain she had a conflict, and Mr. Rice and his co-defendant both waived any possible conflict. So in every situation when the court is simply looking at the issue that is before the court today, which is whether or not the district court properly granted equitable tolling, the only factors to look at under all the Supreme Court cases are whether or not the defendant was diligently pursuing his rights and whether or not there were extraordinary circumstances that stood in his way, outside his control, that stopped him from filing a timely 2255. And under that test, which is all that is before the court today, and all that should be looked at as the factors, Mr. Rice has simply not met that test. The notion that he relied on his attorney doesn't change that when the court looks at the Lawrence v. Florida case, nor are facts about the quality of his ineffective assistance of counsel or the merits of his ineffective assistance of counsel underlying case before this court. And I would like to make clear before I rest that it very much is disputed whether or not the defense counsel at trial misunderstood the difference between the career offender guidelines at sentencing and an 851 notice. So we certainly don't concede, nor do we think there's any place for the court today to be looking at the underlying merits. But that's not before us, right? That's not before you, Your Honor, and we have not conceded that there is an ineffectiveness that occurred at trial here. Ultimately, in addition to that, other than before today, there has been no request for remand to flesh out facts that were not in Ms. Wicks' affidavit. And she represented him both on direct appeal and in the 2255 process at the beginning. She certainly knows what to put in an affidavit, and the record is what the record is before the court, and there is no basis to expand on that. So we respectfully request that you affirm the decision of the district court. Thank you. Thank you. Did Mr. Proctor have any time left? You can take two minutes if you'd like. But I just told you you could have two minutes. Thank you, sir. I'd like to draw the court to Joint Appendix page 549. That is a motion filed by Ms. Wicks, asking she filed a 2255, and simultaneously with it or shortly thereafter, she filed a motion to appoint Consul under the Criminal Justice Act. And what she said in that motion was, undersigned Consul was appointed in the D.C. Circuit and has filed a 2255 motion on Mr. Rice's behalf, but she believes she is conflicted from further representation, given that she is a potential witness and also represented co-defendant Roland Bailey. But what has that to do with her missing the deadline? Well, a couple of things, Your Honor. First of all, when we talk about why she couldn't have raised it on direct appeal, the waiver, they talk about how there was a waiver, and Ms. Wicks says it in her affidavit. What she got a waiver from, from both Mr. Bailey and from Mr. Rice, is I will write your appeal based on what's confined on the record. There's no conflict in that. Either it's on the record or it isn't. She certainly never got a waiver, because she's a potential witness, to ask for a remand to have a hearing on effective assistance of Consul. Okay, but what? Sorry, go ahead. No, you go ahead. Well, apart from that point, nothing in your briefs argues exceptional circumstances based on the conflict. And when I asked you this question on your opening, you said that issue wasn't before us. The issue is not four squarely in the briefs. I'll concede that. It's not at all in the briefs. What you have here is a lawyer who was appointed for direct appeal. Had a conflict, but it was okay for direct appeal. Got the waiver on direct appeal. And in the course of representing the client on direct appeal, has to have conversations with the client about what issues are best raised on direct appeal, what issues are best raised on 2255. To that extent, those proceedings are intertwined at that stage of the proceeding, right? Correct. And then she files the 2255, the motion, and does everything she can do to preserve the client's ability to get a new conflict-free counsel. Except file it on time. Except file it on time, which we know by itself doesn't support tolling. Correct. But in terms of how she manages the conflict, she simultaneously files the motion, she files, she tells the court that the new lawyer will need to supplement the proceedings, and Judge Walton grants both motions. Mr. Rice gets a new lawyer and he supplements, he files whatever he wants as conflict-free counsel. So she starts in a situation where she has to be engaged with him on 2255, and then she disengages in a way that preserves his ability to go forward with the new lawyer. What you've got here is a defendant who, at sentencing, the first time 851 attached says, my lawyer was ineffective, didn't understand it. You've got an appellant who says, I want it raised on direct appeal, he didn't understand it, which was dissuaded from doing so by competent counsel. You've got a guy who sends an affidavit for trial counsel, or for 2255 counsel. I want this issue raised. You've got someone going above and beyond every chance he can get to have this issue raised. Yeah, and I'll give you diligence for the sake of argument, but that doesn't get you the extraordinary circumstance. I'm sorry, go ahead. No, go ahead. The extraordinary circumstances, again, is you've got a lawyer who's arguably conflicted. But you just said that, number one, that's not before us, and you've never answered my question as to even if it was how it relates to her missing the deadline. I mean, I get your concern, but I don't get the relationship. The deadline is nothing other than bad math relates to missing the deadline. Bad what? Bad mathematics relates to missing the deadline. Why that's extraordinary in this circumstance. No, but why? What's the conflict got to do with that? The conflict is more on the diligence side of things. His side of the equation. Yeah. Really? You've never asked a layman. I'm sorry, I don't get that at all. I thought you said, and I just want to be clear because you said we don't have the sentencing transcript in front of us. Did you say that Judge Walton told him at the sentencing hearing to raise an effective assistance of counsel on 2255? Yes, exactly. And then my other question is when you keep saying, I just want to make clear, the extent, once she got to that, she says she is conflicted at the 2255 stage, which would include the filing of the 2255. And just to be clear, all that is teed up before Judge Walton on the 60-day motion. Yes, ma'am. That she was conflicted at the time she missed the deadline because she said is conflicted in her act at the 2255 stage. That's no longer the appeal, right? Right. Okay. Yeah, and Judge, page 14 of the sentencing transcript is when Judge Walton says, if you want to raise it, raise it on 2255. Mr. Proctor, you were appointed by the court to represent Mr. Rice. You've done a fine job and we are grateful to you for your assistance. Thank you. Thank you, sir. We will take the case under submission.
judges: Tatel, Millett, Katsas